Bernardo **SANTIAGO**, Plaintiff,

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 81 Civ. 0193.**

United States District Court, S. D. New York.

Jan. 7, 1982.

Binder & Binder, Hauppauge, N. Y., by Charles Binder, Hauppauge, N. Y., for plaintiff.

John S. Martin, U. S. Atty., Southern District, New York City by Leona Sharpe, Asst. U. S. Atty., New York City, for defendant.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff and defendant cross-move for judgment on the pleadings in this action brought under Sections 1631(c)(3) and 205(g) of the Social Security Act, as amended, 42 U.S.C. §§ 1383(c)(3) and 405(g) (the Act), to review a final determination of the Secretary of the United States Department of Health and Human Services (the Secretary), denying plaintiff's applications for a period of disability and disability insurance benefits, and Supplemental Security Income (SSI) benefits. We treat these motions as motions for summary judgment pursuant to Fed.R.Civ.P. 56 because matter outside the pleadings, specifically the transcript of the record relating to plaintiff's application un-

der the Act (Tr.), has been presented. For reasons which follow, both motions are denied and we remand to the Secretary for further proceedings consistent with this opinion. Furthermore, we place this case on the suspense docket pending the completion of such proceedings, with leave for either party to reinstate the case to the active calendar on ten days notice.

### Background

Plaintiff's application for disability insurance benefits was denied initially on December 4, 1978 (Tr. 60–61), and on reconsideration on May 30, 1979 (Tr. 63–65). Plaintiff also filed an application for SSI benefits (Tr. 66–70) which was denied initially on July 27, 1978 (Tr. 71) and on reconsideration on May 14, 1979 (Tr. 72–74). On May 22, 1979 plaintiff requested a hearing to review both applications (Tr. 75–76), which hearing was held on January 30, 1980 (Tr. 35–55). The decision of the Administrative Law Judge (ALJ) finding the plaintiff not to be under a disability (Tr. 11–15) was filed July 16, 1980 and became the final decision of the Secretary when it was approved by the Appeals Council on November 17, 1980 (Tr. 4–5). Plaintiff, represented by counsel, filed an action in this Court to review the Secretary's decision on January 14, 1981.

The plaintiff—a native of Puerto Rico whence he came to the mainland in 1974 (Tr. 40)—is now close to 60 years old. He testified that his date of birth was July 20, 1922 (Tr. 40) although his initial application for Disability Insurance Benefits (Tr. 56–59) shows his birthdate to be April 20 of that year. Plaintiff has an uninterrupted earnings record between 1955 and 1976 (Tr. 77) and he alleges that emphysema and arthritis have disabled him since November of 1976. His earnings record also shows that he met the special earnings requirements of the Act through December 31, 1980; insured status, however, is not a consideration for entitlement to SSI.

Plaintiff's previous employment was that of a foreman and a pipe-worker in Puerto Rico. He testified to being a working supervisor (Tr. 46) of a crew of twelve other

pipe-workers in the petroleum industry (Tr. 45). Although he would assign jobs to the other men he would himself do the very same work (Tr. 46), which involved lifting pipes of up to 200 pounds (Tr. 46) and repairing them under physically trying conditions—apparently in off-shore waters (Tr. 45). He succinctly described his job as "brute work" (Tr. 45). Plaintiff appears unable to read or write in English—he required an interpreter at the hearing (Tr. 37)—and his formal education ended, so he testified (Tr. 40), in the sixth grade in Puerto Rico.

At the hearing plaintiff complained of severe pain in his spinal column, with manifestations in his legs and hands (Tr. 40, 47). He further complained that there were times when he is "short of breath and unable to breathe." (Tr. 41). Plaintiff also claimed that he could not return to his former job because the pain would prevent him from lifting any weight at all. He testified that he could stand only for about fifteen minutes before the pain starts and that he could walk only for about one hundred feet, but with great difficulty. He further testified that he could sit only for about twenty minutes and that while sitting he tries to support himself on his arms to relieve the pain (Tr. 46–47). Plaintiff also testified that "some lumps seem to come out" in the back of his knees interfering with his ability to get about (Tr. 49). He stated that the medication he takes alleviates the pain only to a moderate degree, but that it causes a burning sensation in the stomach as well as some dizziness (Tr. 47).

Plaintiff's daughter—Ms. Ada Zartlow—also appeared at the hearing on behalf of her father, stating that he often complained of pain (Tr. 53) and that "the lady that lives next to my mother have been taking care of my father helping him getting dressed and undressed" (Tr. 52).

The medical evidence in the record before us is inconclusive. Records from Bronx-Lebanon Hospital indicate that in July of 1976 there was some evidence compatible with degenerative joint disease and moderate osteoarthritis of both knees. However, plain-tiff's lungs were clear, and he had no swelling of the joints. In late 1977 a small cystic lesion was noted on the back of his right knee (Tr. 119). Further entries indicate that plaintiff should "avoid bending, lifting, pushing, pulling and long time standing up on job" (Tr. 103), yet that his neck is supple and that osteoarthritis had stabilized (Tr. 108). An X-ray report of December 1977 shows heart structures to be within normal limits and lungs to be substantially free from infiltrates or abnormal calcifications (Tr. 124). The last available Bronx-Lebanon records—April 1978—show clear lungs, a normal heart rate, and normal throat and neck. But the primary diagnosis continues to be osteoarthritis (Tr. 129).

Dr. Wadid Mauad submitted two brief notes dated June 12, 1978 and January 24, 1979 concluding that the plaintiff was unable to work because of emphysema and arthritis (Tr. 143, 146). Dr. Mauad also submitted a report dated August 30, 1978 stating that chest X-rays showed emphysema and that X-rays of the joints showed osteoarthritis in an advanced state. He concluded that plaintiff could neither bend or kneel nor perform more than limited fine and gross hand motions. (Tr. 144–45). However, he also stated that plaintiff was able to sit and stand for 10 minutes, walk 2 blocks, climb up to 3 flights of stairs, and lift and carry up to 5 pounds (Tr. 149–50).

Dr. Jules Koch, a board-certified internist, examined plaintiff in late November 1978 and found plaintiff's head, neck, and heart to be normal and his lungs clear. Pulmonary functions were normal and the spine showed minimal degenerative changes. All joints were mobile although there was a large cyst on the right knee. Dr. Koch found no clinical evidence of muscle, bone, or lung pathology (Tr. 130–40).

The Appeals Council also considered a short statement from Dr. Bard Miller dated September 23, 1980 in which he states that he had been treating the plaintiff since June 1979 for chronic low back pain, and that a duodenal ulcer, which caused pain and decreased appetite, had been discovered in June 1980 (Tr. 169).

*Discussion*

In his decision that the plaintiff was neither entitled to a period of disability or disability insurance benefits nor eligible for SSI benefits (Tr. 15), the ALJ found that

\*     \*     \*     \*     \*     \*

5. The claimant does not have any impairment or impairments which significantly limit the ability to perform basic work-related functions; therefore, the claimant does not have a severe impairment.

6. Since the claimant does not have a severe impairment, he was not under a disability as defined in the Social Security Act, as amended, at any time through the date of this decision. Tr. 14.

Pursuant to section 223 of the Act, 42 U.S.C. § 423, persons meeting the statutory requirement for "disability" are entitled to receive disability insurance benefits. Section 423 provides in pertinent part:

The term "disability" means—

inability to engage in any substantial gainful activity by reasons of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . 42 U.S.C. § 423(d)(1)(A)

For purposes of paragraph (1)(A)—

an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work. For purposes of the preceding sentence. . . "work which exists in the national economy: means work which exists in significant numbers either in the

region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A).

It is well established that the applicants for disability insurance benefits bear the burden of proving their disability as well as the ultimate burden of persuasion. 42 U.S.C. § 423(d)(5); *Parker v. Harris* (2d Cir. 1980) 626 F.2d 225, 231; *Gold v. Secretary of HEW* (2d Cir. 1972) 463 F.2d 38, 41. Moreover, the Secretary's determination that the claimant is not disabled within the meaning of the Act will be affirmed if predicated on proper legal analysis and supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales* (1971) 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842; *Parker, supra,* at 231.

On the record before us, and in light of the inconclusive nature of the medical evidence, any appropriate finding the ALJ may have made that plaintiff was not disabled could not be disturbed for want of substantial evidence. However, the Court of Appeals for this Circuit has explicitly adopted the rule that once an applicant has met the initial burden by establishing his inability to continue in his former type of employment,

. . .the burden shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training. 626 F.2d at 231.

"This rule necessarily requires the Secretary to make a finding as to whether or not the applicant is capable of returning to his former employment; otherwise, reviewing courts would be unable to determine whether or not the burden of going forward had shifted to the Secretary." *Rivera v. Secretary of HHS,* (S.D.N.Y. October 7, 1980) No. 80 Civ. 1024, slip. op. at 4 (Knapp, D.J.). Thus, the first question which confronted the ALJ under rules prevailing in this Circuit, was whether plaintiff was capable of

returning to his former occupation—in this case a pipe-worker.

The ALJ's findings are completely silent on this matter: no finding was made about plaintiff's ability to return to his old job. The finding that plaintiff "does not have any impairment or impairments which significantly limit the ability to perform basic work-related functions" (Tr. 14) certainly does not establish that he can perform the functions of a pipe-worker, which, apparently, involve lifting heavy loads and working under extreme physical strain.

We therefore remand to permit the ALJ to make appropriate findings in this regard. Furthermore, should the ALJ find that plaintiff is unable to return to his previous occupation, he is then to determine if plaintiff can perform any other specific kind of substantial gainful work shown to exist in the national economy, in accordance with the guidelines recently laid down in *Campbell v. Secretary of HHS*, 665 F.2d 48 (2d Cir. 1981).

SO ORDERED.